UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RONALD A. DOBEK
a.k.a. ALEXANDER M. ROVEGNO,

        Petitioner,

   v.                                 Case No. 16-cv-1255-pp

UNITED STATES OF AMERICA,

        Respondent.

---

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 1); DENYING MOTION TO
AMEND PETITION (DKT. NO. 24); DENYING MOTION FOR DISCOVERY AND
MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS (DKT. NO. 29);
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND
DISMISSING CASE**

---

On September 20, 2016, petitioner Ronald Dobek filed a motion to

vacate, set aside or correct his sentence under 28 U.S.C. §2255. Dkt. No. 1.

This court screened the petition, and allowed the petitioner to proceed on his

claims that his appellate counsel's performance violated the Sixth Amendment.

Dkt. No. 8 at 2. Post-briefing, the petitioner made several requests for the court

to expedite the disposition of this case. See Dkt. Nos. 16, 17, 19. He also

notified the court that he had filed a petition for writ of *mandamus* with the

Seventh Circuit Court of Appeals. Dkt. No. 20. On April 5, 2018—

approximately eighteen months after filing his initial petition—the petitioner

filed a motion to amend it, dkt. no. 24, a request for discovery, dkt. no. 25, and

two requests to expand the record, dkt. nos. 26, 27. On June 20, 2018, the

1

petitioner filed a motion for discovery and for disclosure of grand jury materials. Dkt. No. 29. Because the petitioner has not demonstrated that he is entitled to relief under 28 U.S.C. §2255, the court will deny the petition to vacate, set aside or correct his sentence and will deny the other pending motions.

## I. Background

Several years ago, the government charged the petitioner in two federal cases in this district—United States v. Dobek, 2012-cr-253-JPS, and United States v. Dobek, 2013-cr-231-JPS. This petition asks the court to vacate or set aside the conviction in the second case, 2013-cr-231, but in order to explain the basis for that request, the court must recount facts relating to both convictions.

### A. United States of America v. Ronald Dobek, Case No. 12-cr-253-JPS

On December 11, 2012, the grand jury charged the petitioner with two counts of exporting defense articles—namely, F-16 canopy seals—to Venezuela without a license. Case No. 12-cr-253-JPS at Dkt. No. 1. Count One of the indictment charged an offense date of December 29, 2007; Count Two charged an offense date of December 6, 2008. Id. at 1-2. The arraignment didn't take place until August 16, 2013; the minutes of that hearing indicate that the petitioner was "serving a sentence on a case out of New York." Id., Dkt. No. 9 at p. 2. At that hearing, Magistrate Judge Joseph scheduled a final pretrial conference for October 15, 2013, and set the trial for October 21, 2013 in front of District Judge J. P. Stadtmueller. Id. at Dkt. Nos. 8, 9.

Though the petitioner asked for, <u>id.</u> at dkt. no. 13, and received an extension of time to file pretrial motions, <u>id.</u> at September 3, 2013 order, he filed no motions, and the case proceeded in a trial posture. On October 10, 2013, the parties submitted a final pretrial report in anticipation of the October 21, 2013 trial. <u>Id.</u> at Dkt. No. 21. Four days later, however, the government filed a motion to adjourn the trial. <u>Id.</u> at Dkt. No. 22. The motion stated that a government shut-down had begun on October 1, 2013, and was on-going. <u>Id.</u>, Dkt. No. 22 at p. 2. It explained counsel had learned that day that because of the fiscal impact of the shut-down, no one from "the agency which makes I[nternational] T[raffic in] A[rms] R[egulations] licensing determinations" would be able to make the final licensing determination by the scheduled trial date. <u>Id.</u> Counsel represented that even if the government reopened that week, the agency would need at least two weeks to make the final determination. <u>Id.</u> She also explained that she had been trying to convince individuals from the Departments of State, Justice and Defense to have the licensing work declared excepted from the furlough requirements of the agencies, but that she hadn't been successful. <u>Id.</u> For all intents, there was no witness available to provide critical testimony as to the licensing determination. <u>Id.</u> at pp. 2-3. The government also noted that after October 17, 2013, the clerk's office likely would run out of funds to pay jurors for their jury service. <u>Id.</u> at 3.

At the October 15, 2013 final pretrial conference, Judge Stadtmueller denied the motion to adjourn the trial and dismissed the indictment under Federal Rule of Criminal Procedure 48(b), saying that dismissal was necessary

"as a result of the mismanagement of the case," and that the dismissal underscored the "reality that the Government shutdown has an extremely negative effect on the administration of justice." <u>Id.</u>, Dkt. No. 25 at p. 2. Judge Stadtmueller told the government that he would give them several hours—until noon of that day—to provide him with an explanation of why the dismissal should be without prejudice; he gave defense counsel until the close of business to respond. <u>Id.</u>, Dkt. No. 27, p. 7 at lines 6-10. Each side filed its position papers. <u>Id.</u> at Dkt. Nos. 29 (defense) and 30 (government).

In a twenty-page order dated October 21, 2013, Judge Stadtmueller dismissed the case without prejudice. <u>Id.</u> at Dkt. No. 31. The order recounted the history of the case, and Judge Stadtmueller's opinions about how the U.S. Attorney's Office had handled the case. <u>Id.</u> at 1-9. The order explicitly stated that Judge Stadtmueller was not dismissing the case under the Speedy Trial Act or the Sixth Amendment, <u>id.</u> at pp. 9-10; 15 n.3, but instead emphasized that "the U.S. Attorney's office's multiple miscues in bringing this case to trial," <u>id.</u> at p. 9, led him to use his "substantial discretion," <u>id.</u> at p. 11, to dismiss the case under Rule 48(b).

As to Rule 48(b), Judge Stadtmueller observed:

[T]here is no specific test for determining whether a Rule 48(b) dismissal should be with prejudice or without. Nonetheless, the case law appears to make clear that a Rule 48(b) dismissal is presumed to be without prejudice and should be with prejudice only if the Court has previously made clear that the Government faces dismissal with prejudice if they do not comply with a Court order or if the defendant makes a very strong showing of prejudice.

Id. at p. 16. Without other guidance, Judge Stadtmueller found that the Speedy Trial Act's factors provided "a good framework" for his analysis. Id. at pp. 16-17. He analyzed "the seriousness of the offense, the facts and circumstances leading to dismissal, and the impact of re-prosecution on the administration of justice[.]" Id.

As for seriousness of the offense, Judge Stadtmueller concluded that "there can be little doubt that allegations of selling defense articles to a foreign country are serious" and that "[i]n all, this factor weighs heavily in favor of dismissal without prejudice." Id. at p. 17. Judge Stadtmueller found that the second factor, the "facts and circumstances leading to dismissal," weighed in favor of dismissing the case with prejudice. Id. He recounted that "[t]he Court has amply voiced its dissatisfaction with the U.S. Attorney's handling of this case. To call it inept would, in the Court' view, vastly understate the seriousness of the problems that occurred." Id. Finally, Judge Stadtmueller concluded that the third factor, the "impact of re-prosecution on the administration of justice," was "more neutral." Id. at 18. In making this observation, Judge Stadtmueller commented that

> . . . the Court also acknowledges that dismissal without prejudice "is not a toothless sanction." *United States v. Taylor*, 487 U.S. 326, 342 (1988). That is particularly true, here, where one of the charges against Mr. Dobek has essentially been dismissed with prejudice, because the U.S. Attorney will not have the ability to re-file it against him, as it now stands barred by the applicable statute of limitations.

Id. at 18-19. (In its motion arguing for dismissal without prejudice, the government had argued that "[b]y virtue of dismissing the indictment, the

government will no longer be able to prosecute the defendant for the conduct alleged in Count One, as the statute of limitations has now expired." <u>Id.</u>, Dkt. No. 26 at p. 5.)

Judge Stadtmueller concluded that, while it was a close call, he was going to dismiss the case without prejudice, "given the serious nature of the offense and the general favor of dismissal without prejudice." <u>Id.</u>, Dkt. No. 31 at p. 19. He explained that

> [a]s the Court has continuously noted throughout this order, it finds many shortcomings in the U.S. Attorney's handling of this case. The serious issues in that office should not be weighted so heavily that it would deprive the American people of justice in a case involving an accused international arms trafficker.

<u>Id.</u>

B.    <u>United States of America v. Ronald Dobek</u>, Case No. 13-cr-231

Thirty-seven days later, on November 26, 2013, the grand jury returned a new indictment against the petitioner. Case No. 13-cr-231-RTR at Dkt. No. 1. Count One charged that between July 2007 and January 2009, the defendant conspired to commit an offense against the United States by willfully exporting F-16 canopy seals from the United States to Venezuela. <u>Id.</u> at pp. 1-4. Count Two charged that on or about December 29, 2007, the defendant attempted to export F-16 canopy seals from the United States to Venezuela. <u>Id.</u> at p. 5. Count Three alleged that on or about December 6, 2008, the defendant attempted to export F-16 canopy seals from the United States to Venezuela. <u>Id.</u> at p. 6. The clerk's office assigned this second case to Judge Rudolph T. Randa. <u>Id.</u> at Dkt. No. 5.

The defendant filed a motion to dismiss the indictment, arguing that the five-year statute of limitations under 18 U.S.C. §3282 barred prosecution on the December 29, 2007 conduct (alleged in Count Two of the second indictment). Id. at Dkt. No. 15.

1.    *Judge Callahan's February 10, 2014 Report and Recommendation*

Judge William E. Callahan, Jr., the assigned magistrate judge, recommended that Judge Randa deny the motion. Id. at Dkt. No. 29. Judge Callahan agreed with the defendant that "ordinarily Count Two would be barred by the statute of limitations, which both parties agree is five years. *See* 18 U.S.C. §3282(a)." Id. at p. 4. The government, however, had argued that a different provision in the statute of limitations, 18 U.S.C. §3288, extended the limitations period after an indictment had been dismissed. Id. at pp. 4-5. Judge Callahan recited the relevant portion of §3288, which read:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, . . . which new indictment shall not be barred by any statute of limitations. This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.

Id. at p. 5. The government argued that because the grand jury returned the 13-cr-231 indictment thirty-seven days after Judge Stadtmueller dismissed the 12-cr-253 indictment without prejudice, the statute of limitations did not bar Count Two. Id. at p. 5.

Judge Callahan agreed that Count Two was not barred by the statute of limitations. Id. at p. 10. Relying on numerous cases, he rejected the petitioner's argument that under the last sentence of §3288, he should conclude that Judge Stadtmueller's reason for dismissing the first case constituted "some other reason that would bar a new prosecution." Id. at pp. 6-9 (citing United States v. Clawson, 104 F.3d 250, 252 (9th Cir. 1996); United States v. Shipsey, 363 F.3d 962, 968 (7th Cir. 2004); United States v. Burdix-Dana, 149 F.3d 741, 743 (7th Cir. 1998); United States v. Abu-Shawish, No. 07-CR-289, 2008 WL 2225687 (E.D. Wis. Mar. 17, 2008)).

The petitioner also argued that "Judge Stadtmueller relied on the government's assurance that [Count Two] would be barred by the statute of limitations when he dismissed the original indictment without prejudice pursuant to Rule 48(b) . . . ." Id. at p. 5. Judge Callahan found, however, that the government had not promised that it would not charge the petitioner with the December 29, 2007 conduct; it had mistakenly believed that it could not. Id. at p. 9. He rejected the petitioner's speculative argument that Judge Stadtmueller might not have dismissed the 12-cr-253 indictment without prejudice if not for the government's statement that it could not re-indict the petitioner for that conduct. Id.

The petitioner next contended that because the 13-cr-231 indictment broadened and amended the charges by including a new charge—conspiracy against the United States—the second indictment should not "relate back" to the filing date of the original indictment. Id. at p. 5. Judge Callahan ruled that

he did not need to reach this argument, given his conclusion that Count Two wasn't barred by the statute of limitations. Id. at p. 10.

The petitioner objected to Judge Callahan's report on February 25, 2014, advancing the same arguments he'd made to Judge Callahan. Id. at Dkt. No. 31. Judge Randa summarily accepted Judge Callahan's recommendation on April 11, 2014, and denied the motion to dismiss the indictment. Id. at Dkt. No. 34.

### 2.     *Resolution of Case No. 13-cr-231 and Appeal*

The case proceeded to trial before Judge Randa on June 2, 2014. Id. at Dkt. No. 49. On June 4, 2014, the jury found the petitioner guilty of all three charges. Id. at Dkt. No. 51. Three months later, Judge Randa sentenced the petitioner to eighty-four months of imprisonment on each count, to run concurrently to each other, followed by three years of supervised release. Id. at Dkt. Nos. 66, 67. Nine days after Judge Randa entered the judgment, the petitioner filed a notice of appeal in the Seventh Circuit Court of Appeals. Id. at Dkt. No. 71.

The Seventh Circuit affirmed the conviction. United States v. Dobek, 789 F.3d 698 (7th Cir. 2015). Judge Posner's decision indicated that the petitioner had raised three issues: "the admissibility of an alleged co-conspirator's emails, the sufficiency of the evidence to convict him, and the validity of the jury instruction on willfulness." Id. at 699. The panel deemed the co-conspirator statements admissible and the evidence "more than sufficient" to convict the petitioner; it stated that "[t]he only ground for the appeal that has any possible

merit involves the jury instruction on willfulness." Id. at 700. While finding fault with the willfulness instruction, the court held that any error was harmless. Id. at 702.

C.    United States v. Dobek, Case No. 16-cv-1255 (the current petition)

On September 20, 2016, almost a year and a half after the Seventh Circuit affirmed his conviction, the plaintiff filed this 116-page §2255 motion, dkt. no. 1, along with five pages of "endnotes," dkt. no. 1-3, a ninety-nine-page brief, dkt. no. 2, and 702 pages of appendices, dkt. nos. 2-1, 2-2. In its screening order, the court did not wade into the nuances of the petitioner's hundreds of pages of argument. It simply noted that §2255(b) required it to notify the U.S. Attorney's Office of the petition unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Dkt. No. 8 at 2. Because it was not "readily apparent" to the court that the petitioner wasn't entitled to relief, the court required the government to respond. Id. The court allowed the petitioner to rely on his oversized filings, id. at 3-4, but denied his request to expand the already-voluminous record, id. at 3. The government responded to the petition on January 19, 2017, dkt. no. 9, and the petitioner filed a reply brief on February 9, 2017, dkt. no. 10.

Pages 1-12 of the petitioner's motion are this district's §2255 form. Pages 13 and 14 contain a "forward" section that does not advance any factual or legal argument. Pages 15-39 contain the petitioner's version of the facts, all the way through his petition for *certiorari* with the United States Supreme Court. Pages 39-41 recite law relating to §2255 petitions. On page 41, one gets a hint

10

of the grounds for the petitioner's motion. On pages 41-43, he discusses the standard for demonstrating ineffective assistance of counsel. At pages 43-50, he shifts to a recitation of the law governing procedural default, and discusses the impact of an ineffective assistance claim on that doctrine.

At page 51 of the petition, the petitioner finally states the grounds for his motion. He says that he "intends to present and argue four subordinate claims that appellate counsel abandoned during Dobek's . . . appeal [of his conviction in 13-cr-231]." Id. at 51. He enumerates those four claims as follows:

> (1) a collateral estoppel violation, obvious and significant to the 12-CR-253 cause and the 13-CR-231 cause;
>
> (2) violations of 18 U.S.C. §§ 3282 and 3288's due process notice requirements and tolling requirements, by means of "materially broadening and substantially amending" the 12-CR-253 reindictment under 13-CR-231;
>
> (3) judicial estoppel violations—pursuant to Fed. R. Crim. P. 48(b), that prevents the reclamation of allegations beyond the prescribed limitations period, inhibiting the application of section 3288—upon a "want" or "failure" to prosecute dismissal; and
>
> (4) an abused [sic] of discretion violation by the 13-CR-231 court—by and through failing to observe circuit precedent and stare decisis established under the Grady-Friedman judicial rule, while conducting a review of section 3288 'materially broadening and substantially amendment' claims—during the pretrial litigation in the 13-CR-231 cause.

Id. at 51 (citations to other portions of the petition omitted).

The petitioner restates the claims in the headings of the petition. He says that his appellate counsel was ineffective because counsel ignored "obvious and significant issues" relating to the dismissal of 12-cr-253 and the reindictment in 13-cr-231. Id. at 52. He says that his appellate counsel was ineffective by

ignoring "18 U.S.C. §3282 due process violations and 18 U.S.C. §3288 statutory tolling violations." Id. at 64. He says that his appellate counsel was ineffective in ignoring the nature of the dismissal of 12-cr-253 and its relationship to the statute of limitations period. Id. at 79. And he says that his appellate counsel was ineffective in ignoring the argument that the district court did not conduct a "Grady-Friedman required review" of his statute of limitations claim in 13-cr-321. Id. at 97. In sum, the ninety-nine pages of the petition present one ground for relief: that the lawyer who represented the petitioner in his appeal to the Seventh Circuit provided ineffective assistance in violation of the Sixth Amendment, by failing to raise certain claims.

The government responds that the court should dismiss the petition for several reasons. Dkt. No. 9. First, the government asserts that the issues the petitioner says his appellate lawyer should have raised are frivolous, and thus appellate counsel was correct not to raise them. Id. at 5. Second, it argues that even if the four claims weren't frivolous, appellate lawyers are not required to raise every conceivable argument. Id. at 6. Third, the government contends that even if the arguments weren't frivolous, they weren't "dead-bang winners" compared to the issue the Seventh Circuit found compelling—the challenge to the willfulness instruction. Id. Last, the government argues that any deficiency in the appellate lawyer's performance wasn't prejudicial, because while the jury convicted the petitioner on three counts (including the one that he claims was barred by the statute of limitations), Judge Randa imposed the sentences on

each count to run concurrently, so the petitioner received the same sentence he likely would have received had he been charged with only two counts. Id.

The petitioner filed a fifteen-page reply, dkt. no. 10, accompanied by forty-six pages of exhibits, dkt. nos. 10-2, 10-3.

## II. Analysis

### A. Motion to Vacate, Set Aside, or Correct Sentence (Dkt. No. 1)

#### 1. *Standard*

Section 2555 provides that a federal prisoner

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255(a). "Relief under §2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014) (quoting Blake v. United States, 723 F.3d 870, 878-79 (7th Cir. 2013)). If "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[,]" the court need not hold an evidentiary hearing. 28 U.S.C. §2255(b); Sandoval v. United States, 574 F.3d 847 (7th Cir. 2009) ("The court should grant an evidentiary hearing on a §2255 motion when the petitioner 'alleges facts that, if proven, would entitle him to relief.'")

The petitioner asserts that his appellate counsel's performance was unconstitutionally defective under the Sixth Amendment. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. There are two components to an ineffective assistance claim: first, the petitioner must show that "counsel's performance was deficient," and second, he must show "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).

To show deficient performance, a petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.

To satisfy the prejudice prong of the Strickland standard, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Thomas v. Clements, 789 F.3d 760, 771 (7th Cir. 2015) (quoting Cullen v. Pinholster, 563 U.S. 170, 189 (2011)). "It is not enough to show that counsel's performance had an effect on the outcome or that 'it is possible a reasonable doubt might have been established if counsel acted differently." Id. (quoting Harrington v. Richter, 562 U.S. 86, 111 (2011)). The "reasonable probability" is one "sufficient to undermine confidence in the outcome," which means that there has to be a "substantial" likelihood of a different outcome. Cullen, 563 U.S. at 189 (quoting Richter, 562 U.S. at 111-112).

The Seventh Circuit summarizes the two-part inquiry it this way:

As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The prejudice prong requires the defendant or petitioner to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Laux v. Zatecky, 890 F.3d 666, 674 (7th Cir. 2018) (internal quotations and citations omitted).

The petitioner makes a specific sort of ineffective assistance of counsel claim: that his appellate counsel—who also represented the petitioner at the trial level—failed to select the best issues to present on appeal. In Suggs v. United States, 513 F.3d 675 (7th Cir. 2008), the Seventh Circuit provided a framework for analyzing a claim that appellate counsel erred in failing to raise a particular issue:

> To evaluate [the petitioner's] claim, we must first analyze the trial court record to determine whether his appellate attorney, in fact, ignored significant and obvious issues. We must then compare each neglected issue to, in this case, the issues actually raised on appeal.
>
> Only if an ignored issue is 'clearly stronger' than the arguments raised on appeal will the attorney's performance be considered constitutionally deficient (thereby satisfying the first prong of the *Strickland* test). To establish prejudice—the other component of the *Strickland* test—[the petitioner] must show that there is a reasonably probability that, but for the deficient performance of his attorney, the result of his appeal would have been different.

Suggs, 513 F.3d at 678. "[A]ppellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S.

259, 288 (2000) (citing <u>Jones v. Barnes</u>, 463 U.S. 745 (1983)). While "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." <u>Id.</u>

Before turning to the four claims that the petitioner asserts his appellate lawyer should have raised, the court notes that the petitioner spent pages 43-50 of the petition laying out case law relating to the doctrine of "procedural default." "Procedural default" refers to the rule that "[a] claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." <u>McCoy v. United States</u>, 815 F.3d 292, 295 (7th Cir. 2016) (citing <u>Sandoval</u>, 574 F.3d at 850). "A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default." <u>Id.</u> (citations omitted).

The court suspects that the petitioner discussed procedural default out of a concern that the government would argue that because he didn't raise the four issues he thinks his lawyer should have raised on appeal, he is barred from raising the ineffective assistance claim in his §2255 petition. The government, however, has not argued procedural default; it has argued the merits of the petitioner's ineffective assistance claims. And given that the petitioner asserts the reason he didn't raise these four issues on appeal was because his counsel ineffectively failed to raised them, a finding in his favor might constitute cause for the default. Accordingly, the following analysis does

not analyze procedural default, or cause; the court directly analyzes the merits of the petitioner's Sixth Amendment claims.

2.    *Analysis*

The petitioner alleges that his appellate counsel should have raised four arguments on appeal. The government correctly notes that it is difficult to pin down the exact nature of the four arguments, because of the voluminous and rambling nature of the petitioner's arguments. The government characterized the four arguments as best it could, and as far as the court can tell, those characterizations appear correct. Below, however, the court provides its own characterizations of the arguments.

a.    Argument Number One: Collateral Estoppel

The heading of the petitioner's first argument, pared down, says that appellate counsel failed to raised issues of "judicial bar under collateral estoppel" that the dismissal of the 12-cr-253 case raised in the 13-cr-231 case. Dkt. No. 1 at 52. In the text under that heading, the petitioner mentions "double jeopardy's offshoot of collateral estoppel," id., and says that "[a] collateral estoppel claim is grounds for an immediate appeal, applying if a defendant's claim that a prior jeopardy attaching proceeding—where an issue of ultimate fact was determined in the defendant's favor—was impermissibly adopted and reapplied in the instant proceeding, then Double Jeopardy Clause would foreclose the prosecution," id. at 54. But for the most part, he repeats that his appellate counsel should have raised a "collateral estoppel" claim. Despite the length of the petition, he does not lay out the law on collateral

17

estoppel, and he doesn't say what action in 12-cr-253 estopped what action in 13-cr-231.

In his brief, the petitioner cites numerous cases involving double jeopardy and collateral estoppel. Dkt. No. 2 at 4-11. On page 12, he gets to the heart of the matter; he argues that once 12-cr-253 "[was] determined [in favor of Dobek] by a valid final judgement [(the 12-CR-253 dismissal)]," it couldn't be litigated "between the same parties in any future [] [prosecution] . . ." Id. at 12 (brackets and parentheses in the original). It appears that the petitioner is saying that his appellate lawyer should have invoked the collateral estoppel doctrine to argue that Judge Stadtmueller's order dismissing 12-cr-253 constituted a final decision on the merits, and that the statute of limitations barred the government from re-charging him with the December 29, 2007 conduct. This argument, the petitioner believes, would have convinced the Seventh Circuit to invalidate his conviction in 13-cr-231. And because the lawyer who represented him on appeal also represented him in both 12-cr-253 and 13-cr-231, the petitioner thinks that this issue should have been obvious to his lawyer. Dkt. No. 1 at 65-66. Finally, he argues that this "collateral estoppel" argument was stronger than any of the three claims his lawyer raised on appeal. Id. at 66-74.

The doctrine of collateral estoppel holds that:

a judge's ruling on an issue of law or fact in one proceeding binds in a subsequent proceeding the party against whom the judge had ruled, provided that the ruling could have been (or was, but unsuccessfully) challenged on appeal, or if not that at least it was solid, reliable, and final rather than "intended to be tentative." *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.3d 80, 89 (2d

18

> Cir. 1961)). And provided also that the ruling was necessary to the validity of the final judgment in the case, as otherwise there would be little incentive to challenge it on appeal, and that it had been made only after the party later complaining about it had had an opportunity for a full and fair hearing . . . .

Loera v. United States, 714 F.3d 1025, 1028-29 (7th Cir. 2013) (citing Taylor v. Sturgell, 553 U.S. 880, 892 (2008) and other cases). The doctrine applies in criminal cases, where "it operates much like the rule against double jeopardy . . . ." Id. But collateral estoppel also is a common-law principle, so it is "applicable in a criminal proceeding without reference to the double jeopardy clause . . . ." Id. (citations omitted).

While the petitioner refers to the Double Jeopardy clause in his brief, and cites cases discussing violations of that clause, that clause and its protections do not apply to him. Judge Stadtmueller dismissed 12-cr-253 *before* jeopardy had attached—at a pre-trial hearing on a motion to adjourn the trial date. But, "[j]eopardy doesn't attach until the jury is sworn or, in a bench trial, evidence is introduced." Id. And because jeopardy hadn't attached, the only possible basis for the petitioner's claim that Judge Stadtmueller's decision barred the 13-cr-231 indictment (or part of it) is the common-law doctrine of collateral estoppel.

Collateral estoppel is also known as "issue preclusion." United States v. Salerno, 108 F.3d 730, 740 (7th Cir. 1997). What are the components of collateral estoppel, or issue preclusion? First, a judge must have ruled on the particular issue of fact or law. Loera, 714 F.3d at 1028; Salerno, 108 F.3d at 741 (the issue must have been "determined"). Second, that ruling must be

final. <u>Loera</u>, 714 F.3d at 1028 (ruling must be "solid, reliable, and final rather than 'intended to be tentative'"); <u>Salerno</u>, 108 F.3d at 741 (judgment must be "valid and final"). Third, the ruling must involve an "ultimate issue"— "necessary to the validity of the final judgment in the case," <u>Loera</u>, 714 F.3d at 1028, and "an issue that must be proven beyond a reasonable doubt," <u>Salerno</u>, 108 F.3d at 741 (citing <u>United States v. Bailin</u>, 977 F.2d 270, 280 (7th Cir. 1992)). Fourth, the judge must have issued the ruling "only after the party later complaining about it had had an opportunity for a full and fair hearing." <u>Loera</u>, 714 F.3d at 1029.

In making their determinations, "courts should not apply the collateral estoppel rules in a hypertechnical manner, but rather should examine the pleadings, evidence, charge, and other relevant matter" in the record." <u>Salerno</u>, 108 F.3d at 741 (citing <u>Bailin</u>, 977 F.2d at 280). The defendant—in this case, the petitioner—bears the burden of showing that the previous ruling finally decided the "ultimate issue." <u>Id.</u>

The petitioner's collateral estoppel argument has no merit. Judge Stadtmueller's order dismissing the 2012 case does not meet any of the four requirements listed above.

       i.      **There was no "ruling" that the statute of limitations barred re-indictment on the December 2007 conduct.**

Judge Stadtmueller did not "rule" that the statute of limitations had expired on the December 29, 2007 conduct. The government filed a motion to adjourn the trial; that motion made no mention of the statute of limitations. All

it did was ask Judge Stadtmueller to adjourn the trial. Case No. 12-cr-253 at dkt. no. 22. At the hearing on that motion, Judge Stadtmueller made exactly one reference to the timing related to the December 29, 2007 charge. In recounting the history of the case, he said, "We begin by taking a look at the two charges embodied in the indictment, the first of which relates to conduct that occurred back in 2007, now soon to be six years ago." <u>Id.</u>, Dkt. No. 27 at p. 5. He criticized the fact that although investigative authorities appeared to have been involved in the case since late spring 2010, they had not determined "whether or not the subject matter of this prosecution were or were not licensable in the context of a criminal prosecution," but he said nothing about the statute of limitations. <u>Id.</u> at p. 6. No one—not Judge Stadtmueller, not the prosecutor, not the defense attorney—mentioned the statute of limitations at this hearing. The only "rulings" the judge made at this October 15, 2012 hearing were his ruling denying the government's motion to adjourn the trial, and his *sua sponte* (made on his own initiative, without anyone asking him to) ruling dismissing the case.

Judge Stadtmueller gave the government approximately three hours and thirteen minutes (from the end of the hearing at 8:47 a.m. until noon) to file a brief explaining why the dismissal should be without prejudice. The government met that deadline; it filed a pleading entitled "Motion Requesting that Any Possible Dismissal Be Without Prejudice." <u>Id.</u> at Dkt. No. 26. This motion did not ask the court to rule on whether the statute of limitations would

bar re-indictment of the December 29, 2007 conduct. It asked the court only to order that its earlier dismissal of the case be without prejudice. Id. at p. 5.

In making that request, the government analyzed the three factors the Speedy Trial Act requires judges to consider when deciding whether to dismiss a case with or without prejudice for a violation of that statute. Id. at p. 3. The last of those three factors is "the impact of re-prosecution on the administration of the Speedy Trial Act and on the administration of justice." Id. In arguing that that factor weighed in favor of dismissal without prejudice, the government said, "[b]y virtue of dismissing the indictment, the government will no longer be able to prosecute the defendant for the conduct alleged in Count One, as the statute of limitations has now expired." Id. at 5. The government did not *ask* Judge Stadtmueller to decide whether the statute of limitations had expired; it *assumed* (wrongly) that the limitations period had expired.

The defense also filed a motion; it asked the court to dismiss the case with prejudice. Id. at Dkt. No. 29. This motion did not ask the court to rule that the statute of limitations barred re-indictment on the December 29, 2007 conduct; it did not mention the statute of limitations at all. It asked only that the court dismiss the 2012 case with prejudice based on Speedy Trial Act considerations.

Judge Stadtmueller issued his decision on October 21, 2013. Id. at Dkt. No. 31. The words "statute of limitations" appear for the first time in this order. Id. at 3. After a three-page recitation of the history of the government's investigation, Judge Stadtmueller said:

All of this begs the question: if the U.S. Attorney's Office in this district was not adequately prepared to follow through with making discovery available at the time of the arraignment, *even after having over eight months to prepare*, then why did they even present the charge to the grand jury so much earlier? The answer, of course, lies in the fact that the statute of limitations would have otherwise expired on the conduct charged against Mr. Dobek in Count One of the underlying indictment.

That fact, in itself, also begs the question of why the U.S. Attorney did not bring the charges against Mr. Dobek in a more timely fashion so as to avoid any issues with the statute of limitations.

Id. at 3-4 (emphasis in the original). Judge Stadtmueller went on with his critique of the government's investigation from there.

Some fifteen pages later, Judge Stadtmueller considered the third factor of the Speedy Trial Act's "with or without prejudice" test—the impact of the dismissal on the administration of justice. Id. at 19. Judge Stadtmueller acknowledged that even a dismissal without prejudice was not a "toothless" sanction, particularly "here, where one of the charges against Mr. Dobek has essentially been with prejudice, because the U.S. Attorney will not have the ability to re-file it against him, as it now stands barred by the applicable statute of limitations." Id. Judge Stadtmueller observed, "This is a very serious sanction, in and of itself." Id.

The conclusion of the order—the part that actually "ordered" something—said, "IT IS ORDERED that, pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure together with the Court's supervisory powers, this case be and the same stands DISMISSED without prejudice." Id. at 20.

In sum, Judge Stadtmueller made three rulings over the course of that third week of October 2013. He denied the government's motion to adjourn the trial. He *sua sponte* dismissed the case. And he granted the government's request that the dismissal be without prejudice (impliedly denying the defense request for a dismissal with prejudice). He did not rule that the statute of limitations had run on the December 29, 2007 conduct. Judge Stadtmueller's comment "was not the resolution of a dispute[.]" <u>Loera</u>, 714 F.3d at 1030.

### ii.    **There was no "final" ruling.**

Even if one could construe Judge Stadtmueller's assumption that the statute of limitations had run on the December 29, 2007 conduct as a "ruling," it was not "final." In <u>Loera</u>, Judge Posner described a "final" order or ruling as one that "could have been (or was, but unsuccessfully) challenged on appeal, or if not that at least it was solid, reliable, and final rather than 'intended to be tentative.'" <u>Loera</u>, 714 F.3d at 1028. The "could have been challenged on appeal" description is helpful; as a court in the Northern District of Illinois explained,

> Principles of res judicata and collateral estoppel preclude the same parties from relitigating identical issues in courts of first impression partly because an appellate process exists to correct legal error committed below. Unless parties are accorded the right to appeal the judgment of a judicial officer, the decision is not final and collateral estoppel and res judicata principles do not apply.

<u>United States v. Savides</u>, 658 F. Supp. 1399, 1404 (N.D. Ill. 1987).

Judge Stadtmueller ordered the dismissal of the indictment without prejudice in October 2013. Less than a year later, on September 8, 2014, the

Seventh Circuit held that "dismissal of the indictment without prejudice was not a final order" in <u>United States v. Davis</u>, 766 F.3d 722, 734 (7th Cir. 2014), *rev'd en banc*, 739 F.3d 712 (7th Cir. 2015). While the court later reversed that ruling in an *en banc* decision, it appears that at the time Judge Stadtmueller dismissed the petitioner's 2012 case, his order would not have been considered a final, appealable order under Seventh Circuit law. If the order dismissing the indictment without prejudice was not subject to appeal, then comments that the judge made in reaching that decision were not subject to appeal. The government had no way to appeal Judge Stadtmueller's assumption that the statute of limitations had run on the December 29, 2007 conduct—at least not in the 2012 case. And again, Judge Stadtmueller did not *rule* that the limitations period had expired. He *assumed* that it had.

### iii. Judge Stadtmueller's statements were not necessary to the validity of the final judgment.

When arguing the motion to dismiss the indictment in the 2013 case, the petitioner relied heavily on Judge Stadtmueller's statement that

> one of the charges against Mr. Dobek has essentially been dismissed with prejudice, because the U.S. Attorney will not have the ability to re-file it against him, as it now stands barred by the applicable statute of limitations.

Case No. 13-cr-231, Dkt. No. 15 at p. 9. He argued that Judge Stadtmueller had "seized" on the "assurance" by the government that "consequences had been sustained in that one of the counts was dismissed per the statute of limitations." <u>Id.</u> He speculated that "[t]his representation by the government

may very well have convinced the Court to dismiss the indictment without prejudice." Id. The petitioner argued that Count Two of the 2013 indictment charged "the same exact conduct" that the government "had assured the Court in 12CR253 was time barred and was dismissed with prejudice." Id. at 10-11. He stated that, in telling Judge Stadtmueller that it wouldn't be able to re-indict the petitioner for the December 29, 2007 conduct, "[i]n effect, the government was promising the Court it would not prosecute Dobek for the activities alleged in count two of the instant indictment and count one of the indictment in 12CR253." Id. at 14. He claimed that the government had "misled" Judge Stadtmueller into believing that he was dismissing that conduct with prejudice, and that if the government hadn't misled Judge Stadtmueller, he "may have issued a decision dismissing both count one and count two with prejudice." Id.

In recommending that Judge Randa deny the motion to dismiss the indictment, Judge Callahan rightly dismissed this argument out of hand. Id., Dkt. No. 29 at 9. He stated, "[t]o be sure," the government had not *promised* that it would not re-indict the petitioner for the December 29, 2007 conduct. Id. He rightly concluded that the petitioner was speculating when he posited that Judge Stadtmueller might have dismissed both counts with prejudice if he had known that the statute of limitations had not run on that conduct. Id. And he pointed out that the petitioner's argument ignored Judge Stadtmueller's reliance on the presumption that dismissals should be without prejudice, and his discussion of the seriousness of the crime. Id. Judge Callahan rightly

characterized the government's single statement that it would not be able to prosecute the petitioner on the December 2007 conduct as a "mistake." Id.

When the court considers the transcript of the October 2013 hearing at which Judge Stadtmueller dismissed the case, and the entire twenty-page opinion deciding that the dismissal should be without prejudice, it is clear that he did not base his decision solely on his mistaken belief that the dismissal of the December 2007 conduct was, effectively, a dismissal with prejudice. Did his mistaken belief factor into his reasoning? It did. Was it necessary to his decision to dismiss the indictment? No. And again, the "final judgment" here was Judge Stadtmueller's order dismissing the case without prejudice, not an order finding that the statute of limitations had run on the December 2007 conduct.

### iv. The parties did not have a full and fair opportunity to litigate the issue.

Finally, Judge Stadtmueller's October 21, 2013 statement about the statute of limitations having expired was not the result of a full and fair hearing on that question. Neither he nor either of the parties even mentioned 18 U.S.C. §3282(a), which prescribes the limitations period. Neither he nor either of the parties mentioned or discussed 18 U.S.C. §3288, which extends that limitations period after an indictment is dismissed. Neither party asked Judge Stadtmueller to decide whether the limitations period had run. The judge did not ask the parties to brief the issue—he asked only for their positions on whether his dismissal should be with or without prejudice. Judge Stadtmueller

gave the government only three hours and thirteen minutes to file its brief on that question, and he gave the defense some five hours to craft its response. In contrast, in 13-cr-231, the parties had a full and fair opportunity to address the statute of limitations issue directly, and Judge Callahan provided a thoughtful, reasoned analysis in response.

In sum, the petitioner has not met his burden of demonstrating that collateral estoppel precluded the government from indicting him in 13-cr-231. Because collateral estoppel did not bar the indictment, it would have been frivolous for the petitioner's appellate counsel to raise the issue in the Seventh Circuit when appealing his conviction in that case. The petitioner fails to state a Sixth Amendment claim that his counsel was ineffective for failing to raise this issue.

        b.      Argument Number Two: Interpretation of the Limitations Statutes

The heading of the second argument in the petition refers to the two statutes Judge Callahan interpreted in concluding that the statute of limitations did not bar the 2013 indictment. Case No. 16-cv-1255, Dkt. No. 1 at p. 64. The petitioner argues that his appellate counsel should have argued that the 2013 indictment impermissibly "materially broadened and amended" the charges in the 2012 indictment, rendering the application of 18 U.S.C. §3288 (the statute that extended the statute of limitations) inapplicable. Id., Dkt. No. 2 at 67 (citing United States v. Italiano, 894 F.2d 1280, 1283 (11th Cir. 1990); United States v. Grady, 544 F.2d 598, 602 (2d Cir. 1976); United States v. Friedman, 649 F.2d 199, 204 (3d Cir. 1981)). The petitioner again argues that

this issue should have been obvious to his appellate counsel, id. at 66, and says that it is a stronger argument that the three counsel did raise on appeal, id. at 68-73.

The petitioner made this argument to Judge Callahan, who addressed it in a footnote: he remarked that the plain language of §3288 did not require the government to bring identical charges in the new indictment as in the original indictment. Case No. 13-cr-231, Dkt. No. 29 at 10 n.6.

"A statute-of-limitations defense . . . reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill-suited for prosecution." Smith v. United States, 568 U.S. 106, 112 (2013) (citing Toussie v. United States, 397 U.S. 112, 114-15 (1970)). "[Statutes of limitations] are 'designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.'" United States v. Ross, 77 F.3d 1525, 1537 (7th Cir. 1996) (quoting Toussie, 397 U.S. at 114-15).

> However, once an indictment has been timely filed, the defendant is notified of the charge against him and may begin to prepare his defense. The mere restatement or superficial amendment of the charge in a subsequent indictment does not further prejudice the defendant and thus does not offend the purposes underlying the limitation period. Therefore, a superseding indictment that supplants a still-pending original indictment relates back to the original indictment's filing date so long as it neither materially broadens nor substantially amends the charges initially brought against the defendant.

Id. at 1537.

Ross involved *superseding* indictments—indictments brought while the original indictment is pending—as opposed to "new" indictments filed after a dismissal without prejudice. Id. The petitioner cites two other cases involving the question of whether the statute of limitations bars superseding indictments: Grady, 544 F.2d at 602 and Friedman, 649 F.2d at 204. These two decisions are not binding on this court. This court is bound by decisions from the Seventh Circuit Court of Appeals; these decisions come from the Second and Third Circuits.

As Judge Callahan noted, it does not appear that the Seventh Circuit has ruled on whether it would apply the reasoning in Ross to new indictments brought under §3288. Case No. 13-cr-231, Dkt. No. 29 at 10 n.6. The petitioner cites Italiano, 894 F.2d at 1283, for the proposition that in cases involving a new indictment filed under §3288, "the limitations period will only be tolled if the charges and allegations in the new indictment are substantially the same as those in the original indictment." The petitioner argues that in 13-cr-231, the charges were not substantially the same as those in the 2012 indictment, and so he did not receive "the notice considerations that permit tolling" under §3288.

Italiano is not binding on this court—it is a decision from the Eleventh Circuit Court of Appeals, not the Seventh Circuit. The court does not know whether the Seventh Circuit would decide the issue the same way. But even if this court assumes that the Seventh Circuit would decide the issue the same way the Eleventh Circuit did, the petitioner's argument fails.

30

The 2013 "new indictment" did not materially broaden or substantially amend the charge in Count One of the original indictment—the charge relating to the December 29, 2007 conduct. Count One of the 12-cr-253 indictment alleged that the petitioner knowingly and willfully exported F-16 canopy seals from the United States to Venezuela on December 29, 2007. Case No. 12-cr-253 at Dkt. No. 1. Count Two of the 13-cr-231 indictment contained a similar allegation: that the petitioner knowingly and willfully attempted to export F-16 canopy seals from the United States to Venezuela on December 29, 2007. Case No. 13-cr-231 at Dkt. No. 1. The petitioner had notice from December 11, 2012 that he was being accused of having committed the December 29, 2007 offense. He had notice within the five-year time limitations period mandated by 18 U.S.C. §3282.

The petitioner, however, doesn't argue that the government changed, or broadened, the charge relating to the December 29, 2007 conduct. Instead, he argues that the government added a new count in the 13-cr-231 indictment that it had not charged in the 2012 indictment. Count One of the 2013 indictment charged the petitioner with conspiracy to commit an offense against the United States, "namely, to willfully export F-16 canopy seals" without a license, from July 2007 through January 2009. Case No. 13-cr-231 at Dkt. No. 1. The petitioner argues that the addition of this new count "broadened" or "substantially amended" the otherwise-time-barred charge, such that he was not placed on notice of the charge he'd have to defend.

There is no support for this theory in <u>Italiano</u>, or in <u>Ross</u>, or in §3288. The fact that the government timely charged him with an additional count does not impact whether the petitioner had sufficient notice that he'd be called to account for the December 29, 2007 conduct. If the government had changed something about the December 29, 2007 charge—perhaps charged him with exporting some other articles on that date, or charged him with exporting the canopies to a different country on that date, or charged him with committing a different statutory offense on that date—the petitioner would have a basis for his relation-back argument. Under these circumstances, he does not.

This argument also ignores the fact that the defendant was aware, *before* Judge Stadtmueller dismissed the 2012 indictment, that the government planned to add the conspiracy charge. In his dismissal order, Judge Stadtmueller recounted how the government had submitted a jury instruction for conspiracy ahead of the planned trial date. Case No. 12-cr-231, Dkt. No. 31 at p. 5. Judge Stadtmueller explained that he thought this was a mistake, until he learned the next day in a phone conversation with the prosecutor that "the Government planned to re-indict Mr. Dobek on Tuesday, October 15, 2013— the day of the final pretrial conference and less than a week before trial was scheduled to commence—to add a conspiracy charge." <u>Id.</u> Judge Stadtmueller went on to say that the petitioner's counsel had informed him that counsel received word of the proposed plan to add the conspiracy charge "only moments before the parties submitted their pretrial report to the Court." <u>Id.</u> The docket shows that the parties submitted their joint pretrial report to the

court on October 10, 2013, <u>id.</u> at dkt. no. 21, meaning that the petitioner had notice regarding a possible conspiracy charge for five days before the court dismissed the 2012 case, and over a month before the grand jury returned the 2013 indictment. And, as the government noted in the 2013 case, the conspiracy charge "circumnavigated," or included, the two substantive charges. <u>Id.</u>, Dkt. No. 24 at p. 13.

Because the petitioner's statute-of-limitations argument has no merit, it would have been frivolous for his appellate counsel to raise it. The petitioner has not stated a Sixth Amendment claim with regard to his counsel's failure to raise this argument.

   c.  Argument Number Three: Rule 48(b) Judicial Estoppel

The heading of the third argument isn't helpful in identifying the argument—it mentions "Fed. R. Crim. P. 49(b) dismissal," and its "judicial and discretionary effects and bar that prevents the reclamation of allegations beyond the prescribed limitations period . . . ." Dkt. No. 1 at 79. Rule 49(b) is the rule that governs service of motions in criminal cases; the arguments following the heading demonstrate that the petitioner meant to refer to Fed. R. Crim. P. 48(b), the rule under which Judge Stadtmueller dismissed the 2012 indictment. The crux of the petitioner's third argument appears on page 82 of the petition, where he argues that the dismissal of an indictment under Rule 48(b) "establishes a judicial estoppel bar, that prevents the reclamation of allegation beyond section 3282 . . . ." Dkt. No. 1 at 82. The petitioner again asserts that this claim should have been obvious to his appellate counsel,

saying that "[a] pedestrian surface review of the 13-CR-231 record denotes a bounty of pretrial litigation and issue preservation" regarding the claim.[1] Id. at 80. And he argues that this argument was stronger than any of the three that appellate counsel did raise. Id. at 84-91.

In support of his Rule 48(b) "judicial estoppel" claim, the plaintiff cites United States v. DiStefano, 347 F. Supp. 442, 444-45 (S.D.N.Y.[2] 1972). Dkt. No. 1 at 82. This short, forty-six-year-old case from a district court in New York does not mention Rule 48(b). Nor does it mention judicial estoppel. In DiStefano, the district court dismissed an indictment based on the government's failure to prosecute. Id. at 443. The circumstances were a bit similar to the circumstances in the petitioner's 2012 case before Judge Stadtmueller—the district court dismissed the case because "it was of the opinion that seven months was a reasonable time within which to require the government to locate its witness." Id. at 444. The government appealed the dismissal, and while that appeal was pending, the statute of limitations expired. Id. About a week later, the missing witness surfaced in another country; a couple of weeks later, the government asked the court for the ability to reargue the dismissal of the indictment. Id. The court denied the motion, and the government petitioned the court of appeals for a writ of *mandamus*,

---

[1] Oddly, the petitioner also acknowledges that the claim is "novel." Dkt. No. 1 at 83.

[2] The petitioner's cite attributes the DiStefano decision to the Second Circuit Court of Appeals. Dkt. No. 1 at 82. It is actually a decision from the district court for the Southern District of New York.

directing the district court to reinstate the indictment. Id. The court of appeals denied the *mandamus* petition and dismissed the appeal. The government then filed a motion with the district court, asking it to reinstate the indictment. Id.

The district court concluded that it couldn't grant the motion, because the statute of limitations had run some five months earlier. Id. Citing 18 U.S.C. §§3288 and 3289, the court said, "[w]hen an indictment is dismissed because of technical defects or irregularity in the grand jury, a new indictment may be returned within six months of the date of dismissal even though the statute of limitations has run or might run in the interim." Id. The court went on to say, however, that "where the indictment has been dismissed for failure to prosecute, reindictment is not possible once the statute of limitations expires." Id.

The petitioner's DiStefano argument has no merit for a couple of reasons. First, and more minor, DiStefano—as a district court decision from another circuit—is not binding on this court. Second, and of more importance, the fact that DiStefano was decided almost fifty years ago means that it relied on the version of 18 U.S.C. §3288 that was in effect in 1972. At that time, the statute read,

> Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury . . . after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information . . . which new indictment shall not be barred by any statute of limitations.

Pub. L. No. 88-520, 62 Stat. 828 (codified as amended at 18 U.S.C. §3288 (1964)). See also, United States v. Moriarty, 327 F. Supp. 1045, 1047 (E.D. Wis. 1971). So at that time, §3288 extended the limitations period only if the reason the indictment was dismissed was because of an "error, defect, or irregularity with the grand jury." See Moriarty, 327 F. Supp. at 1047-48 ("Section 3288 is specific in its requirement that an otherwise time-barred count can be allowed only if the earlier dismissal related to irregularities occurring in connection with grand jury proceedings.") In contrast, the current version of the statute, in effect since 1988 and when Judge Stadtmueller dismissed the 2012 indictment, extends the limitation period if the indictment was dismissed for "any reason."

The petitioner knows that DiStefano relied on an old version of §3288, but he claims that the reason Congress amended the statute was "to close a technical loop-hole related to 18 U.S.C. §§3161-3174 (Speedy Trial Act ("STA") and the averting section 3288 reindictment." Dkt. No. 1 at 83. He argues that nothing in the amendment "foreclose[s] the effects of a Fed. R. Crim. P. 48(b) dismissal," which he argues is "non-constitutional and directly associated with the inherent powers of the court." Id., see also Dkt. No. 2 at 72 (extended argument on this topic.) Despite the many pages the petitioner devotes to his argument that the "non-constitutional" nature of a Rule 48(b) dismissal has some sort of preclusive effect, the court does not understand this argument. DiStefano does not say that a Rule 48(b) dismissal establishes a "judicial

estoppel bar." No other case that this court can find says that Rule 48(b) creates some sort of estoppel.

All of the petitioner's talk of "judicial estoppel" or an "estoppel bar" amounts to an argument that dismissal under Rule 48(b) somehow functions as a dismissal with prejudice. The petitioner has not cited any cases that say this. He points to no language in the rule that supports this argument. Rule 48(b) simply says that the court may dismiss an indictment if "unnecessary delay" occurs in, among other things, bringing a defendant to trial. Further, the petitioner's argument—unsupported by any case law or authority—ignores the fact that Judge Stadtmueller asked the parties to brief the question of whether dismissal should be with or without prejudice, and it ignores Judge Stadtmueller's ultimate ruling specifically stating that he was dismissing the 2012 case *without* prejudice. "Dismissal without prejudice" means "that the defendant can be reindicted." United States v. Janik, 723 F.2d 537, 546 (7th Cir. 1983).

The petitioner's insistence that a Rule 48(b) dismissal is somehow preclusive also feeds into his reiteration of the claim he made in the 2013 case that a Rule 48(b) dismissal is a dismissal for "some other reason that would bar a new prosecution" under the last sentence of §3288. Judge Callahan rejected this argument, and Judge Randa adopted that recommendation. Judge Callahan cited several cases analyzing the last sentence of §3288—Clawson, 104 F.3d at 252 (finding that the last sentence applied in cases where the "other reason" was not capable of being cured); Shipsey, 363 F.3d at 962

(reiterating that conclusion); <u>United States v. Sorcher</u>, 498 F. Supp. 2d 603, 613 (E.D.N.Y. 2007) (which found that the legislative history of §3288 supported the <u>Clawson</u> court's conclusion). Case No. 2013-cr-231, Dkt. No. 29 at pp. 6-7. Judge Callahan also cited a Seventh Circuit decision that "seem[ed] to agree" that "§ 3288 is broadly applicable." <u>Id.</u> at 7 (citing <u>Burdix-Dana</u>, 149 F.3d at 743).

The petitioner insists, however, that a dismissal "under the S[peedy] T[rial] A[ct] holds a constitutional basis, while that of Rule 48(b) is a discretionary [one] crafted at the control of the Court, with only considerations of the Sixth Amendment woven into its fabric." Dkt. No. 2 at 64. For this reason, he maintains that a dismissal under Rule 48(b) is a dismissal for "some other reason that would bar a new prosecution" under §3288. Although the petitioner devotes pages of his petition and brief to his argument that the "non-constitutional" nature of a Rule 48(b) dismissal makes it one of those "other reasons," the court is not persuaded by his arguments.

A Rule 48(b) dismissal does not constitute one of those "other reasons" that bars reindictment under the last sentence of §3288. The first sentence of the statute—the version that was in effect when Judge Stadtmueller dismissed the petitioner's 2012 case—says that "whenever" a felony indictment is dismissed "for any reason," a "new indictment may be returned" within six calendar months of the date of dismissal. 18 U.S.C. §3288. It also says that a "new indictment" "shall not be barred by any statute of limitations." <u>Id.</u> The last sentence carves out two exceptions: the government can't file a new indictment

38

(1) where "the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations," or (2) "some other reason that would bar a new prosecution." Id. The first exception does not apply in the petitioner's case; the grand jury returned the 2012 indictment just shy of three weeks before the statute of limitations would have expired on the December 29, 2007 conduct.

The second exception applies when a court dismisses an indictment for "some other reason that would bar a new prosecution." Id. The statute does not single out dismissals under Rule 48(b). The statute also does not say that the government can't re-indict when the dismissal was for "delay in bringing the defendant to trial." It says that the government can't re-indict when the dismissal was "for some other reason *that would bar a new prosecution.*" Id. (emphasis added). And a dismissal without prejudice does not bar a new prosecution.

One of the cases Judge Callahan cited in his decision recommending denial of the motion to dismiss the 2013 indictment looked at the statute's legislative history to find out what Congress may have meant by "some other reason that would bar a new prosecution." In Sorcher, 498 F. Supp. at 613 n.7, the district court for the Southern District of New York explained:

> The legislative history of 18 U.S.C. § 3288 supports this court's conclusion, in keeping with *Clawson's* analysis, that the government is entitled to a six-month period to reindict defendants. Prior to the 1988 amendments, the statute provided, in relevant part:
>
> > Whenever any indictment is dismissed for any error, defect, or irregularity with respect to the grand jury,

39

> or ... is found otherwise defective or insufficient for
> any cause after the period prescribed by the
> applicable statute of limitations has expired, a new
> indictment may be returned in the appropriate
> jurisdiction within six calendar months of the date of
> the dismissal of the indictment ... which new
> indictment shall not be barred by any statute of
> limitations.

In *United States v. Peloquin*, 810 F.2d 911, 912 (9th Cir.1987), the Ninth Circuit interpreted (former)18 U.S.C. § 3288 as precluding the government from reindicting the defendant to cure a violation of the Speedy Trial Act because such an error did not render the indictment "defective or insufficient." Writing for the Court, Judge Kennedy, now Justice Kennedy, stated, "[t]he government argues that there are policy reasons for not giving defendants the chance to wiggle off the hook because of Speedy Trial Act dismissals. This may be so. But we are not in the business of drafting statutes. This task we leave to Congress." *Id.* at 913.

In 1988, apparently in direct response to *Peloquin,* Congress amended § 3288, including the addition of the last sentence. *See* 134 Cong. Rec. S17360-02 (daily ed. Nov. 10, 1988). In setting forth a detailed analysis of the Anti-Drug Abuse Act of 1988, of which this change to § 3288 was a part, Senator Joseph Biden, then Chairman of the Senate Judiciary Committee, stated, "[t]he reason a charge is dismissed (unless the reason for the dismissal would independently bar further prosecution such as a dismissal on grounds of double jeopardy or a dismissal 'with prejudice' under a statute) should not determine whether the government is given additional time to bring a new prosecution." *Id.*

In light of Senator Biden's explanation, a dismissal without prejudice under Rule 48(b) would not constitute one of those "other reasons," because Rule 48(b) does not independently bar further prosecution. If the petitioner believes that the Sorcher and Peloqin decisions provide a basis for arguing that a Rule 48(b) dismissal is qualitatively different from a dismissal under the Speedy Trial Act, the court is not convinced. The Sixth Amendment to the

Constitution guarantees a defendant the right to a speedy trial. U.S. CONST. amend. VI. The Speedy Trial Act is a statutory protection of that right, and provides a mechanism for remedying a violation of the right. See 18 U.S.C. §§3161-3174. Rule 48(b) is a procedural mechanism that provides a court with discretion to sanction delays in bringing a defendant to trial. Fed. R. Crim. P. 48(h). The petitioner's argument, that the 1988 amendment to §3288 allows the government to reindict after a Speedy Trial dismissal without prejudice but does not allow it to reindict after a Rule 48(b) dismissal without prejudice, is illogical.

Given that the petitioner represents himself, the court also will construe his argument liberally as a general judicial estoppel argument. "The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Maine, 532 U.S. at 749 (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). Courts look at three factors to determine whether a party is judicially estopped from raising an argument: whether the party's positions in the different proceedings were "clearly inconsistent," whether the party was successful in persuading the

court in the earlier proceeding to accept the earlier position, and whether the party would "derive an unfair advantage if not judicially estopped." <u>Coker</u>, 707 F.3d at 760.

The government did not assert "clearly inconsistent" positions in the 2012 and 2013 cases. In the 2012 case, it stated that it would not be able to re-indict the petitioner on the conduct charged in Count One of the 2012 indictment, because the statute of limitations had expired. Case No. 12-cr-253, Dkt. No. 26 at p. 5. In the 2013 case, the government admitted that it had "erroneously stated that Count One of the original indictment would be barred by the statute of limitations." Case No. 13-cr-231, Dkt. No. 24 at p. 11. It noted in the 2013 case that "[o]rdinarily, Count Two of the instant indictment would be barred by the statute of limitations," but it argued that, post-dismissal, §3288 extended the limitations period. <u>Id.</u> at pp. 10-11. These two positions are not "clearly inconsistent." The government made a mistaken assumption in the 2012 case, which it admitted to and explained in the 2013 case. That is not asserting two "clearly inconsistent" positions.

Finally, even if there is an argument to be made, somehow, that a Rule 48(b) dismissal without prejudice has some preclusive effect, or constitutes one of those "other reasons" barring reindictment under §3288, the petitioner cannot show that his counsel was constitutionally ineffective in failing to raise it. He cannot demonstrate that if his lawyer had raised this issue at the Seventh Circuit, there is a substantial probability that the outcome of the appeal would have been different. Even if that court accepted the argument

and vacated the conviction on Count Two of the 2013 indictment, the petitioner advanced no argument on which that court could have invalidated his conviction on the other two counts.

          d.      Argument Number Four: Abuse of Discretion

Finally, the petitioner argues that Judges Callahan and Randa abused their discretion in denying the motion to dismiss the 2013 indictment, "by failing to properly observe the Seventh Circuit's standards controlling the review of section 3288 claims." Dkt. No. 2 at 87. He argues that they "failed to observe and conduct a review pursuant to the Grady-Friedman and Italiano standards long since accepted by the Seventh Circuit[,]" and that, in doing so, the judges misapplied and failed to recognize controlling precedent. Id. at 89. He also asserts that the district court ignored United States v. Daniels, 387 F.3d 636 (7th Cir. 2004), Ross, 77 F.3d 1525 (7th Cir. 1996), and United States v. Schimmel, 950 F.2d 432 (7th Cir. 1991), as well as something he refers to repeatedly as "Gillespie, 666 F. Supp. at 1141 (1987)." Id. at 90.

As the court already has noted, Grady, Friedman and Italiano are decisions from other circuits. They did not bind Judge Callahan and Judge Randa. They do not bind the Seventh Circuit, for "neither [the Seventh Circuit] nor the district courts of [the Seventh Circuit] give the decisions of other courts of appeals automatic deference . . . ." Colby v. J.C. Penny Co. Inc., 811 F.2d 1119, 1123 (7th Cir. 1987).

The petitioner also alleges that Judge Callahan abused his discretion by failing to follow several district court cases from within the Seventh Circuit,

namely <u>United States v. Lytle</u>, 658 F. Supp. 1321 (N.D. Ill. 1987); <u>United States v. Roth</u>, 669 F. Supp. 1386, 1390 (N.D. Ill 1987); and <u>United States v. Gillespie</u>, 666 F. Supp. 1137 (N.D. Ill. 1987). But "district judges in this circuit must not treat decisions *by other district judges*, in this and *a fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or collateral estoppel applies. Such decisions will normally be entitled no more weight than their intrinsic persuasiveness merits." <u>Id.</u> at 1124.

Although <u>Daniels</u>, <u>Ross</u> and <u>Schimmel</u> *are* Seventh Circuit decisions, and *were* binding on Judge Callahan and Judge Randa, they did not create the precedent that the petitioner claims. In <u>Daniels</u>, as in <u>Ross</u>, the Seventh Circuit considered the question of whether the statute of limitations barred a superseding indictment, and concluded that "'a superseding indictment that supplants a still-pending original indictment relates back to the original indictment's filing date so long as it neither materially broadens nor substantially amends the charges initially brought against the defendant.'" <u>Daniels</u>, 387 F.3d at 642; <u>Ross</u>, 77 F.3d at 1537. As the court already has noted, the Seventh Circuit might apply the same reasoning to new indictments under §3288 (the Eleventh Circuit did in <u>Italiano</u>), but it hasn't yet said so. Regardless, the court has found that the 2013 indictment did not materially broaden or substantially amend the December 29, 2007 charge.

<u>Schimmel</u> involved a second petition to revoke probation—not a "new indictment." <u>Schimmel</u>, 950 F.2d at 436. There was no reason for Judge Callahan or Judge Randa to consider—or apply—<u>Schimmel</u> to the facts before

them, because the case before them did not involve facts similar to those in

Schimmel. The petitioner cannot show that either Judge Callahan or Judge

Randa failed to adhere to the principles of precedent or *stare decisis*, because

they did not. For the petitioner's appellate lawyer to have raised such a claim

would have been frivolous. The petitioner has not demonstrated that his

appellate counsel was constitutionally ineffective in failing to raise this

argument.

      B.    <u>Motion To Amend Petition (Dkt. No. 24)</u>

On  April 5, 2018—some eighteen months after he filed the petition—the

petitioner filed a motion asked the court to allow him to amend the petition

under Fed. R. Civ. P. 15(a)(2). Dkt. No. 24. He wanted to add a fifth claim to the

four arguments in the original petition, alleging criminal contempt against the

United States Attorney's Office for the Eastern District of Wisconsin under 18

U.S.C. §401(3). <u>Id.</u> at 1. The court will deny that motion.

Rule 15(a)(2) says that if more than twenty-one days have passed since

the other side filed its answer, a party needs leave of court to amend his

pleadings. It says that "[t]he court should freely give leave when justice so

requires." <u>Id.</u> Justice does not require that leave under these circumstances.

The petitioner wants to add a "criminal contempt" claim under 18 U.S.C.

§401(3), which says that "[a] court of the United States shall have power to

punish by fine or imprisonment, or both, at its discretion, such contempt of its

authority, and none other, as—(3) Disobedience or resistance to its lawful writ,

process, order, rule, decree, or command." 18 U.S.C. §401(3). Section 401(c) is

a criminal statute. "Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are . . . poor candidates for the imputation of private rights of action." Chapa v. Adams, 168 F.3d 1036, 1038 (7th Cir. 1999) (citations omitted). The government, not private citizens, prosecutes crimes. A private citizen cannot sue for damages under a criminal statute unless Congress provides for a private right of action. Universities Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 770 (1981).

Further, this particular statute gives the *court* the right to punish contempt of its authority. If the *court* believes that the U.S. Attorney's Office has disobeyed a court order, the *court* can punish that behavior under §401(3). The petitioner cannot.

Finally, as the court has explained above, the U.S. Attorney's Office did not violate a court order by indicting the petitioner in the 2013 case. Judge Stadtmuller did *not* prohibit the government from re-indicting the petitioner; he specifically dismissed the case without prejudice, which meant that the government *could* re-indict the petitioner. The court denies this motion.

C.    Consolidated Request for Discovery and Disclosure of Grand Jury Materials (Dkt. No. 29)

The petitioner has filed a motion to conduct discovery on his proposed 18 U.S.C. §401(3) criminal contempt claim, and has asked for the "grand jury

materials" in the 2012 and 2013 cases in relation to that claim. Dkt. No. 29.[3] This motion is an attempt to collect information to support his claim that the government committed criminal contempt in violation of 18 U.S.C. §401(3) when it indicted him in the 2013 case. The court will deny the motion—the petitioner cannot bring a claim under a criminal statute.

## III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases (which apply in cases filed under 28 U.S.C. §2255), the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 472, 484 (2000) (internal quotation marks omitted).

The court declines to issue a certificate of appealability, because no reasonable jurist could debate that the petitioner has not stated a valid Sixth Amendment claim of ineffective assistance of appellate counsel.

---

[3] He also has filed a request for discovery, dkt. no. 25; a request to expand the record, dkt. no. 26; and a second request to expand the record, dkt. no. 27. The clerk's office did not docket these "requests" as motions; if it had, the court would have denied them, for the same reason it denies the motion for discovery and grand jury disclosure.

## IV. Conclusion

The court **ORDERS** that the petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. §2255 is **DENIED.** Dkt. No. 1.

The court **DENIES** the petitioner's motion to amend the petition. Dkt. No. 24.

The court **DENIES** the petitioner's motion for discovery and motion for disclosure of grand jury materials. Dkt. No. 29.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED with prejudice**.

Dated in Milwaukee, Wisconsin this 18th day of September, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**